### In re SACHAROFF & KLEINER.

(District Court, E. D. New York. July 31, 1908.)

BANKRUPTCY—SETTING ASIDE COMPOSITION—INTEREST OF CREDITORS.

A motion to set aside a composition by a bankrupt should be denied, notwithstanding the fact that it was shown that some creditors fraudulently obtained notes for more than their pro rata share of their debts, where the applicant for the order also obtained a preference, and, because of the fact that the bankrupt had been unable to pay the composition notes, new proceedings in bankruptcy had been instituted against him, in which the innocent creditors could be best protected by the disallowance of the fraudulent claims.

In Bankruptcy. On motion to set aside composition.

Frank L. Entwisle, for petitioner.
Walter T. Kohn, for bankrupts.
Engel Bros., for creditors.

CHATFIELD, District Judge. The bankrupts were originally adjudicated upon a voluntary petition filed November 14, 1907. A composition was effected on the basis of 10 per cent. cash and two notes of 10 per cent. each, making 30 per cent. in all, and the property released to the bankrupts on March 27, 1908. The expenses of the bankruptcy proceedings were also paid by the bankrupt, and the first of the two series of notes have fallen due and have not been paid. It now appears that one Emanuel Strauss advanced money to Sacharoff with which to make the first payment of 10 per cent., and that Sacharoff made an independent agreement with Strauss, which he has been unable to perform, and by reason of which failure Strauss has not advanced to Sacharoff the necessary money to meet the notes as they became due.

A second petition in bankruptcy was thereupon filed by E. Reis & Co., J. Vroom Roscoe, and the Primrose Tapestry Company, upon the 30th day of June, 1908. This petition was verified by Carl Reis, as president of E. Reis & Co., a corporation, by J. Vroom Roscoe individually, and by J. Vroom Roscoe, as agent of the Primrose Tapestry Company, and this second petition in bankruptcy contains the allegation that a fraudulent assignment had been made by the alleged bankrupts, while insolvent, to Emanuel Strauss, with intent to hinder, delay, and defraud their creditors, and with the intent to prefer said Strauss. The amounts of the claims of each of these creditors set forth in the second petition are the same amounts proven by them in the original proceeding in bankruptcy, and a payment of 10 per cent. on each claim is admitted. These claims are followed by this paragraph:

"That no part of said sums has been paid, excepting as aforesaid, and that the alleged bankrupts have no set-offs, counterclaims, or defenses thereto in law or equity."

The petition as drawn contained the names of "——— Weinreb and ——— Weinreb, copartners composing the firm of Weinreb Bros."; but these names were stricken out and the name of the Primrose Tapestry Company written wherever necessary, and neither of the members of the firm of Weinreb Bros. joined in the petition as filed. On the 1st day of July, 1908, one Jacob Weinreb, a member of the firm of Weinreb Bros., obtained an order from this court directing the bankrupts to show cause why the composition should not be set aside for fraud, upon allegations that the compromise was obtained by statements that all of the creditors were to share equally, and that since the entry of the order of composition, and within a few hours prior to the obtaining of the order to show cause, Weinreb had discovered that the statements of the bankrupts were false, in that the bankrupts had preferred several creditors, including the Matred Mills and J. Vroom Roscoe, who had received 40 per cent. of their claim, instead of 30. The petition contains the further allegation that Weinreb had relied upon the representations of the bankrupts, and would not have accepted the compromise if he had known the exact situation. The petitioner asks that the composition be vacated, and the proceeding reinstated, and the property returned to the trustee for distribution.

An answer has been interposed by the bankrupts, denying the allegations of fraud, also alleging that Weinreb had knowledge of whatever had transpired prior to the acceptance of the offer of composition, and that Weinreb had himself obtained certain property which must be considered a preferential payment, and was therefore not asking for the statutory relief in the nature of the action of a court of equity when himself free from wrongdoing.

The testimony need not be discussed at length. It appears that Roscoe received promissory notes to the extent of $150, partly as commissions or payment for his time in obtaining other creditors to sign the composition agreement, and partly as an extra payment on account of his principal, although the bankrupts allege that they understood

the entire amount of these notes was for the compensation of Roscoe, in the form of commissions. Under either aspect of the matter, Mr. Roscoe was committing a fraud upon the other creditors, inasmuch as in a second involuntary petition he alleges that the claims were his own, and has now testified that he held them by assignment. Carl Reis, who verified the second petition in bankruptcy, admitted upon the stand that through transactions with his partner, of which he had more or less knowledge, his firm had received notes covering their claim in full, and that these notes had not been paid, and were now in process of suit. Weinreb testified on the stand that, immediately preceding the original petition in bankruptcy, he had obtained certain goods from Sacharoff, with the tacit or unwilling consent of Sacharoff himself, which goods had been originally purchased from Weinreb, and were all that could be certainly identified by him.

There can be no doubt that Weinreb had knowledge of Sacharoff's insolvency at the time he took these goods, and Weinreb's relations with Roscoe, and with the various creditors at the time of the composition, were such that it is impossible to consider him an innocent party in the matter. It may be true that Weinreb did not learn of the preferences to Roscoe and Reis till after the acceptance of the composition; but Weinreb is certainly not in the position of a creditor coming into this court with his hands clean, and entitled to the consideration due to a deceived and innocent creditor. It is evident that sufficient fraud in the transaction itself is shown to justify any action by this court, under the authority of the statute as interpreted in the case of In re Roukous (D. C.) 128 Fed. 645, 12 Am. Bankr. Rep. 128.

But it must also be considered whether the general creditors will profit by setting aside the compromise, and whether the fraud shown is such that, if the circumstances had been known to the court at the time of approving the compromise, the compromise itself would have been rejected by the court, and the amount deposited by the bankrupt to effect this composition returned. It is plain that the notes to Roscoe and to the Reis Company were obtained by fraud; even the money paid to Roscoe as commissions, in view of the fact that he was individually a creditor, although actually merely an assignee, being fraudulent as against the other creditors. These notes, unless in the hands of innocent parties, should be void as between Sacharoff and the creditors to whom they were given; and it is believed that in no court could the recipients of these notes justify their claims to the notes, if the issue of fraud had been raised. Certainly the other creditors in the bankruptcy proceeding are entitled, and were entitled, to have the preferential payments set aside, and whatever money might be paid by Sacharoff on account of these fraudulent and preferential payments distributed for the benefit of the creditors generally.

But this result the testimony now shows is impossible, inasmuch as Sacharoff has been unable to pay any notes, is to-day unable even to carry out the terms of the compromise which was approved by the court, and is on the verge of again being put in bankruptcy, when the fraudulent and preferential notes will be considered and their validity may be questioned. Under the circumstances, it would seem

that the application to set aside the composition should be denied. The fraudulent notes in evidence should be declared void, so far as the bankruptcy proceeding is concerned, and the persons holding them, unless they have been transferred to an innocent holder for value, should be enjoined from attempting to collect them, as against the other creditors of the estate. If Mr. Sacharoff has sufficient assets to take care of his obligations subsequent to the confirmation of the composition, and to meet these notes, the amount thereof should be turned over to the trustee in the original proceeding, which should be revived for the purpose, and a dividend declared to creditors who have been innocently imposed upon. In the meantime the notes will be held by the clerk as exhibits in this proceeding, and further transfer thereof prevented.