### In re BALLANCE et al.

### In re RUBIN.

(District Court, E. D. New York. July 18, 1913.)

BANKRUPTCY (§ 386*)—COMPOSITION—PROCEEDINGS TO SET ASIDE.

> Evidence *held* to entitle a judgment creditor of a bankrupt, whose case was pending on appeal at the time of the bankruptcy and of a composition, to have such composition set aside on the ground of fraud, unless the bankrupt placed him on an equality with the other creditors.

> [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 606; Dec. Dig. § 386.*]

In the matter of William A. Ballance and the William A. Ballance Company, bankrupts. On petition of Wolf Rubin to set aside a composition, and demurrer thereto. Demurrer overruled.

Leo Oppenheimer, of New York City, for petitioner.

Jonas, Lazansky & Neuberger, of New York City (Edward Lazansky, of New York City, of counsel), for bankrupts.

CHATFIELD, District Judge. Application has been made upon affidavits to vacate a composition confirmed November 23, 1912, and to reinstate the bankruptcy petition.

It appears that the former bankrupt was in business in his own name, upon the 27th day of December, 1911, when a judgment for personal injuries was recovered against him, in the sum of $2,638.96, by a workman in his factory. As security upon appeal, certain mortgages upon the real estate of Ballance and $500 in cash were deposited for the benefit of the respondent Rubin. This judgment was affirmed upon the 6th day of December, 1912, but in the meantime Mr. Ballance incorporated the William A. Ballance Company, to which he transferred the assets of his business, except his real estate, and received

298 shares of the capital stock, of the par value of $100 per share; the remaining 2 shares having been issued to two other individuals as incorporators.

In September, 1912, an involuntary petition was filed against William A. Ballance, and also the William A. Ballance Company. The schedules in bankruptcy of William A. Ballance show the judgment in question as secured, while the schedules of the company make no reference to the judgment creditor. The proceedings in bankruptcy resulted in a composition offer of 2 per cent. to the creditors of Mr. Ballance and 20 per cent. to the creditors of the corporation. All of the "corporation" creditors were included among the "individual" creditors. The compositions were carried through and the property turned back to Mr. Ballance and the Ballance Company.

In the meantime the appraisal in bankruptcy showed the land held as security by the judgment creditor to be worth less than the amount of incumbrance thereon. Upon sales in foreclosure still less was received, with the result that, at the time of the affirmance of the judgment, a deficiency existed in the place of the equity which Mr. Ballance stated when offering the bond.

It also appears that in the individual schedules the judgment creditor was listed as "Wolf Rubin, New York City," and he received no actual notice of the offer of composition. The statutory printed notice was given, and the money for the composition deposited. This was distributed before the judgment creditor learned that, although the equity upon which he was relying as security had been wiped out by foreclosure, Mr. Ballance and the Ballance Company were again in possession of their property and claiming a discharge from all debts scheduled, including the judgment, for the payment of which the creditor had been left to collateral finally amounting to the sum of $500 deposited in cash.

The petition to vacate the composition charges fraud, not only in the formation of the Ballance Company and the representations under which the judgment creditor took the mortgaged property as collateral, but also in the method of making up the schedules and offering the composition. The respondent, Mr. Ballance, has demurred to the petition, and the matter has been argued as if upon exceptions to the sufficiency of the matters alleged in the petition as fraudulent.

It will be noticed that the petition was filed but a few days before the statutory six months expired. The demurrer has admitted all the allegations of the petition, and this might be construed to admit the charges of fraud in so far as these are allegations of fact; but the record shows that these charges of fraud are in substance conclusions, and the demurrer, therefore, presents substantially an admission of the items above stated, and leaves the question of whether they constitute fraud to the court for determination.

It is further suggested on the argument of the demurrer that the purpose of a composition and the determination of the statutory requirements as to the advantage of the creditors would require denial of the present application, inasmuch as it is in no way shown that the creditors generally would benefit by setting aside the composition, and

inasmuch as the alleged fraud affects the status of but one creditor, who, if he had been present and opposed, would not have been heard by the court, to the extent of finding upon the present showing that the composition should not have been approved.

This last statement of the law is generally in accord with a previous decision of this court (In re Sacharoff & Kleiner [D. C.] 163 Fed. 664); but the application thereof to a situation arising upon a debt scheduled against an individual bankrupt, and not scheduled against a corporation in composition of the bankrupt's former assets, must be considered further.

· The general propositions, that fraud is shown by a false statement of the bankrupt "relied upon by a creditor in agreeing to a composition" (In re Roukous [D. C.] 128 Fed. 645), and that perjury with respect to the property under administration constitutes a false oath sufficient to prevent a discharge by the composition (In re Conroy [D. C.] 134 Fed. 764), may be taken as the starting point from which to consider the present application.

It appears from the record that the judgment creditor testified to having some knowledge of the pendency of bankruptcy proceedings, and the notice of discharge was published according to statute. This in general would be sufficient to bind a party who was merely trying to avoid the effect of mistake, accident, or his own neglect; but, as was shown in the Roukous Case, supra, an application to vacate the discharge upon the ground of fraud may be based upon after-discovered evidence. Even if a creditor has relied upon the general observance of the bankruptcy statute, he will not be estopped from seeking to set aside a composition or discharge, unless it be clearly shown that he was in possession of the information as to which he was guilty of laches, or that he deliberately ignored an opportunity to keep posted and to know of the facts which he should have taken into account.

But, when we consider the situation shown by this record as admitted, a different question is presented. It is evident that the corporation could be formed only with the assets which Mr. Ballance had the right to convey as against his creditors, generally, and that his stock in said corporation, and even the entire assets of the corporation, would be available to any individual member whose claim was not shown to be subordinated to a corporation creditor without notice of the individual debt. If Mr. Ballance's creditors had the right to look to the assets paid for stock in the corporation, then Mr. Ballance could not convey those assets. unless he could legally put all of his property out of his creditors' reach, or unless he received valid consideration therefor.

The judgment of the petitioner herein was then outstanding. It had been secured on appeal; but this was not equivalent to payment, and did not wipe out the personal obligation of Mr. Ballance, which would continue to exist if the collateral were not sufficient to satisfy the same. When therefore, Mr. Ballance conveyed his property to the corporation, he should have known that, unless the judgment creditor's claim was protected, he would be committing a fraud upon that creditor if the collateral proved insufficient. His own good faith as to the value of the collateral could not relieve him from his obligation as

judgment debtor. When both Mr. Ballance and the Ballance Company went into bankruptcy, he should have realized that his individual creditors had the right to attack the transfer to the bankrupt corporation, and to claim payment of their debts from the property of the corporation, except as the claim of corporate creditors should be superior thereto. This he ignored in making up the schedules, and thereby again committed a fraud, in the eyes of the law, upon his individual creditors, even if he did not have the intention of violating the bankruptcy statute. His statements about the matter, even in the face of the admissions by the demurrer, do not indicate the commission of perjury, and would not justify a finding that Ballance was not entitled, under any circumstances, to his discharge.

The creditor, Rubin, states that he had some knowledge that a bankruptcy proceeding was pending, and, although he may not have received notice of the application for composition, he was nevertheless bound to inquire into the effect upon his claim of the bankruptcy proceeding, or else be bound by the discharge effected through composition. The composition proceedings, however, were closed before Rubin's judgment was affirmed, and therefore before he could endeavor to realize upon the collateral given to secure the judgment pending appeal. Both Rubin and the bankrupt, however, had knowledge, prior to confirmation of the composition, that the security for the Rubin claim was inadequate, and the bankrupts knew that Rubin was in effect not secured beyond the $500 cash deposited. If Rubin had applied for further security, or attempted to file his claim in bankruptcy, he might have learned sufficient to compel composition on his claim upon the basis of 22 per cent. But as to these matters he was guilty of laches. On the other hand, the pendency of the appeal prevented him from discovering what was in effect a fraud upon him, and he is therefore entitled to be placed in the position which all of the creditors would have been, if the entire amount of composition had been distributed equally.

The court can taken no notice of the fact that certain creditors have received 22 per cent. and certain others but 2 per cent., as none of these creditors made objection to the proceedings, and their time to do so has expired. . But the record is sufficient to show that the composition should be set aside upon the gound of the fraudulent result, unless Mr. Ballance places this creditor upon a par with the individual creditors whom he did recognize as creditors of the corporation, and unless he now completes a composition, which could have been approved by the court, as if to distribute the entire assets among all the creditors, including the petitioner.

The claims upon which a dividend was paid aggregated:

By the company...................................... $11,585.85
By the individual...................................   7,930.60
                                                     _____
    Total........................................... $19,516.45
Dividend at 20 per cent. equals for the company........... $2,318.92
Dividend at 2 per cent. equals for the individual...........    159.46
                                                     _____
    Total dividends................................. $2,478.38

The Rubin claim amounted to $2,638.96, less $500, and this would raise the total liabilities to $21,655.41. On this amount 11.45 per cent. could have been paid with the sum of $2,478.38. 11.45 per cent. of $2,-138.96 equals $244.91, which should be paid by Mr. Ballance to the judgment creditor, in order to put him in the position to which he was entitled, and to avoid the elements of fraud resulting from the previous situation